*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Z. L. ROBBS, Minor.

UNPUBLISHED
November 14, 2024
2:01 PM

No. 369411
Wayne Circuit Court
Family Division
LC No. 2018-000324-NA

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor child, ZLR, after the trial court conducted additional proceedings on remand from this Court.[1] The trial court did not clearly err by finding that termination served ZLR's best interests under MCL 712A.19b(5). We therefore affirm.

## I. BACKGROUND

This matter originally arose from the termination of respondent's parental rights to another one of his children, JBS. JBS was approximately one year old when he suffered permanently disabling, nearly fatal brain injuries. The evidence presented during a prior termination proceeding led the trial court to find that JBS sustained his injuries while in respondent's care as either a direct result of respondent violently shaking him or respondent's neglect in allowing such harm to occur. It also led the trial court to find that respondent was physically and emotionally abusive to JBS's mother. In a later criminal proceeding arising out of JBS's injuries, respondent was charged with first-degree child abuse. In January 2018, respondent was acquitted of first-degree child abuse following a jury trial.

---

[1] See *In re Z L Robbs, Minor*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket Nos. 350340 and 352406).

In March 2018, the Department of Health and Human Services (DHHS) petitioned the trial court to exercise jurisdiction over ZLR under MCL 712A.19b(1) and (2) and terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*) (abuse or injury to child or sibling; reasonable likelihood of abuse or injury if returned to parent), (j) (reasonable likelihood of harm if returned to parent), (k)(*iii*) (battering, torture, or severe abuse of child or sibling; reasonable likelihood of harm if returned to parent), (k)(*iv*) (abuse of child or sibling causing serious organ impairment; reasonable likelihood of harm if returned to parent), and (k)(*v*) (abuse of child or sibling causing life-threatening injury; reasonable likelihood of harm if returned to parent). In May 2018, the trial court found statutory grounds to exercise jurisdiction over ZLR under MCL 712A.19b(1) and (2) and statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (j), and (k).[2] And in August 2018, the trial court found that termination served ZLR's best interests under MCL 712A.19b(5).

Respondent appealed, and we affirmed in part, reversed in part, and remanded for further proceedings. See *In re Z L Robbs, Minor*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2020 (Docket Nos. 350340 and 352406), p 5. We held that the trial court did not clearly err when it found that there were statutory grounds warranting termination of respondent's parental rights. *Id*. at 3. Yet we also held that the trial court clearly erred when it found that termination served ZLR's best interests without explicitly addressing his relative placement. *Id*. at 5. We remanded in order for the trial court to determine whether termination served ZLR's best interests despite his relative placement. *Id*.

On remand, the trial court held an additional best-interests hearing.[3] During the hearing, forensic family clinician Sharon Hamilton-Martin testified regarding the evaluation she prepared on behalf of the Clinic for Child Study.[4] She opined that, although respondent did not take responsibility for JBS's injuries, he should be given the opportunity to complete a parent-agency treatment plan based in part on his acquittal of first-degree child abuse. She did not know whether respondent had recent contact with ZLR but stated that respondent and ZLR both wished to have relationships with one another.

DHHS foster care worker Christopher Troutman testified that respondent did not have contact with ZLR within the preceding year. He was not aware of any bond shared by respondent and ZLR. He stated that ZLR resided with his mother and was doing well in her care. He expressed

---

[2] The trial court did not specify the subsections that were met under MCL 712A.19b(3)(k).

[3] The best-interests hearing took place on December 1, 2023. The delay was caused by a number of factors, including respondent's failure to appear at a previously-scheduled hearing, effectuating service of the hearing notice by publication, and completing a best-interests evaluation by the Clinic for Child Study.

[4] The parties did not present the evaluation as part of their respective appellate briefs. Our references to the evaluation are accordingly based on Hamilton-Martin's testimony rather than the document itself.

concern regarding ZLR's safety in respondent's presence and stated that the risk of harm outweighed any potential benefit of a future bond among ZLR and respondent.

The trial court ultimately found by a preponderance of the evidence that termination served ZLR's best interests under MCL 712A.19b(5). In doing so, the trial court took judicial notice of the best-interests evaluation prepared by the Clinic for Child Study, the entire court file, and this Court's opinion in *In re Z L Robbs, Minor*, unpub op at 1-5. It addressed the prior termination of respondent's parental rights to JBS as follows:

> I do have strong recollections regarding JBS and there are strong differences between criminal proceedings and civil proceedings, such as this. It isn't just that the burden of proof is lower in these matters, the rules of evidence are different and more evidence is allowed in.
>
> It was left with a very strong impression after trial here that yes, [respondent] caused the injuries to JBS . . . . The child was horrifically injured. The child almost died.
>
> I was also left with the impression that [respondent] really did not care anything about JBS or most of his children. I have the impression the only child that he really cares about is this child.

The trial court explained that it reviewed the evaluation prepared by the Clinic for Child Study and stated that "the evaluator paid a great deal of attention to the findings of the criminal court and none at all to the kind of determination that I have here." It stated that termination is generally disfavored "if it does not produce an adoptable child" and that "[n]ot having a father in [his] life is a serious detriment for the child." It explained that ZLR wished to have a relationship with respondent but had little contact with him and lacked a bond with him. It recognized that termination may make ZLR's relationship with respondent's relatives more difficult. It also noted that ZLR lacked a bond with his siblings, did not have special needs, and did not implicate any specific ethnic or cultural considerations. It concluded as follows:

> There is another factor that I saw that the Court of Appeals mentioned and that is domestic violence and I was left from the initial trial with the clear view that this is a violent man and the things that irritate him need to not be around this dad because he will beat them to a pulp. This isn't just true for infants. It is true for children that are five and three-quarters years old.
>
> * * *
>
> In think a relationship between this dad and this child is going to result in injury to the child at some time. I find that termination is in the child's best interest.

The trial court entered an order terminating respondent's parental rights. The order provided, in relevant part, as follows:

> ZLR is now in the care of his mother, who has become a non-respondent. The [Court of Appeals'] decisions disfavor terminations when they do not produce

an adoptable juvenile, with exceptions for sexual predators and the physically dangerous. [Respondent] is just such a dangerous person. ZLR is much better off without [respondent] in his life. The factors [the Supreme Court Administrative Office] identified from [Court of Appeals] opinions regarding best interests strongly favor termination . . . .

This appeal followed.

## II. STANDARD OF REVIEW

"Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). This Court reviews the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

## III. DISCUSSION

The trial court did not clearly err by finding by a preponderance of the evidence that termination served ZLR's best interests under MCL 712A.19b(5).

## A. LEGAL FRAMEWORK

"If the court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should "focus on the child rather than the parent" when determining whether termination is in the best interests of a child. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making a best-interests determination, the trial court may consider factors such as:

[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

"[T]he fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests."

*In re Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted). Although a child's placement with a relative weighs against termination, a trial court may nonetheless terminate a respondent's parental rights if it finds that termination serves the child's best interests. See *id*.

## B.  REASONABLE EFFORTS

Respondent argues that he should have been afforded the opportunity to complete a parent-agency treatment plan before his parental rights were terminated. We disagree.

"Generally, reasonable efforts must be made to reunite the parent and children unless certain aggravating circumstances exist." *In re Moss*, 301 Mich App at 90-91, citing MCL 712A.19a(2). Aggravated circumstances are defined in MCL 722.638 to include battering or other severe physical abuse of a child or their sibling. *In re Smith-Taylor*, 509 Mich 935 (2022), citing MCL 722.638(1)(a)(*iii*). Aggravated circumstances are present both for a parent who is a suspected perpetrator of such abuse and a parent who is suspected of placing a child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate the risk. *In re Smith-Taylor*, 509 Mich at 935, citing MCL 722.638(2).

Here, JBS was approximately one year old when he suffered permanently disabling, nearly fatal brain injuries. The evidence presented during a prior termination proceeding led the court to find that JBS sustained his injuries while in respondent's care as either a direct result of respondent violently shaking him or respondent's neglect in allowing such harm to occur. Respondent was the suspected perpetrator of the abuse such that aggravated circumstances existed under MCL 722.638(1)(a)(*iii*), and DHHS was not required to make reasonable efforts to reunite respondent with ZLR.

## C.  BEST INTERESTS AND ANTICIPATORY NEGLECT

Respondent argues that the trial court clearly erred by finding that termination served ZLR's best interests, and in doing so, erroneously applied the doctrine of anticipatory neglect. We again disagree.

To begin, the record reflects that respondent did not share a strong bond with ZLR. During the best-interests hearing, Hamilton-Martin testified that respondent and ZLR wished to have relationships with one another but acknowledged that she did not know whether respondent had recent contact with ZLR. Troutman clarified that respondent did not have contact with ZLR within the preceding year, and he was not aware of any shared bond among respondent and ZLR. Because respondent had little, if any, recent contact with ZLR, the trial court appropriately weighed this factor in favor of termination.

Respondent further contends that ZLR's relative placement weighed dispositively against termination. We disagree. "A child's placement with relatives is a factor that the trial court is required to consider." *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *Id*. (quotation marks and citation omitted). We previously remanded this case in order for the trial court to determine whether termination served ZLR's best interests

despite his relative placement. *In re Z L Robbs, Minor*, unpub op at 6. The record reflects that ZLR resides with his biological mother, who is considered a relative under MCL 712A.13a(1)(j)(*i*), and was doing well in her care. In weighing ZLR's best interests, the trial court properly considered his relative placement and nonetheless concluded that termination served ZLR's best interests.

Furthermore, the trial court correctly applied the doctrine of anticipatory neglect in concluding that termination served ZLR's best interests. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). "However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). As previously addressed, JBS was approximately one year old when he suffered permanently disabling, nearly fatal brain injuries. The evidence presented during a prior termination proceeding led the court to find that JBS sustained his injuries while in respondent's care as either a direct result of respondent violently shaking him or respondent's neglect in allowing such harm to occur. During the best-interests hearing, the trial court recognized that JBS and ZLR differed in age but nonetheless concluded that respondent's treatment of JBS was probative of his potential treatment of ZLR. In doing so, the trial court weighed anticipatory neglect along with other factors, including the tenuous bond between ZLR and respondent, ZLR's well-being in his mother's care, ZLR's preference, the potential impact on ZLR's relationship with respondent's relatives, and respondent's other acts of domestic violence. The trial court therefore correctly applied the doctrine of anticipatory neglect and did not clearly err by finding by a preponderance of the evidence that termination served ZLR's best interests. Cf. *In re Figueroa*, unpublished per curiam opinion of the Court of Appeals, issued May 18, 2023 (Docket No. 362893) (concluding that the trial court clearly erred by applying the doctrine of anticipatory neglect without adequately considering other best-interest factors such as parenting ability, visitation history, shared bond, and the need for permanency, stability, and finality).[5]

## IV. CONCLUSION

The trial court did not clearly err by finding that termination served ZLR's best interests under MCL 712A.19b(5). We therefore affirm.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young

---

[5] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).